IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| PLASSEIN INTERNATIONAL CORP., et al., | ) ) | Case No. 03-11489(WS) |
| | ) | Jointly Administered |
| Debtors. | ) ) ) | |
| | | |
| WILLIAM BRANDT, AS HE IS THE TRUSTEE OF THE ESTATES OF PLASSEIN INTERNATIONAL CORP., et al., | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Adv. Proc. No.05-51472 |
| TRIVEST II, INC.; TRIVEST PARTNERS, LP; and GULFSTAR GROUP, INC., | ) ) ) ) | related # 11 and 14 |
| Defendants. | ) ) ) | |

## OPINION DENYING DEFENDANTS' MOTIONS TO DISMISS

Before the Court are two Motions to Dismiss this Adversary Proceeding (collectively, the "Motions"), one filed by Defendants Trivest II, Inc. ("Trivest") and Trivest Partners L.P. ("Trivest Partners") [D.I. 11], and the other by Defendant Gulfstar Group, Inc. [D.I. 14] ("Gulfstar") (collectively, the "Defendants"). Plaintiff's response includes a request for leave to amend the Complaint. After trial and briefing, the Court **DENIES** the Motions to Dismiss and, **GRANTS** Plaintiff's request for leave to amend.

1

As the Motions make essentially the same arguments, they will be treated together.

## I. BACKGROUND

Plassein Packaging Corp. ("Plassein" or the "Debtor") was formed on June 18, 1999, for the purpose of acquiring certain manufacturers of flexible packaging and specialty film through a series of stock acquisitions and associated financing. The Defendants were Plassein shareholders.

Plaintiff Chapter Trustee (the "Trustee") filed this adversary proceeding on May 11, 2005, to recover (1) $2 million paid to Trivest and Gulfstar as investment fees in connection with a January 2000 stock acquisition transaction; (2) $972,000 paid to Trivest Partners as a transaction fee related to the so-called "Rex Acquisition" in May 2000; and (3) a total of $1,269,685 paid between the years 2000 and 2003 to Trivest and Trivest Partners as management fees.

The Trustee bases his theory of recovery primarily on Delaware constructive fraudulent conveyance law, alleging variously that the stock acquisitions rendered the Debtors insolvent; that the Debtors did not receive reasonably equivalent value for the fees paid Defendants; and that the remaining assets of the Debtors and associated entities were unreasonably small as a result of paying the fees to the Defendants.

The Defendants move to dismiss for want of personal jurisdiction and for failure to state a claim pursuant to Fed. R. Civ. P. 12 (b) (2) and (b) (6), respectively, made applicable to these proceedings by Fed. R. Bankr. P. 7012.

## II. JURISDICTION

The Court has subject-matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 334(b) and 157(b)(1).

### III. **DISCUSSION**

#### A. **Personal Jurisdiction**

The Defendants argue this Court lacks personal jurisdiction over them by virtue of Fed. R. Civ. P. 4 (k) (1) (A), which generally limits the in personam jurisdiction of a federal district court to that of the corresponding state's court of general jurisdiction. See, e.g., Joint Stock Soc'y v. Heublein, Inc., 936 F. Supp. 177, 191-92 (D. Del. 1996). The Defendants disavow any connection with Delaware that could, consistent with the Due Process Clause of the Fourteenth Amendment, subject them to jurisdiction under Delaware's long-arm statute, 10 Del. C. § 3104.

Be this as it may, the Fourteenth Amendment and the Delaware long-arm statute as such are irrelevant in the bankruptcy context. See e.g., AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust), 335 B.R. 309, 317 (Bankr. D. Del. 2005). By providing for national service of process in bankruptcy cases, Fed. R. Bankr. P. 7004(d) frees the district courts (and thus, this Court) from the general limitation imposed by Rule 4 (1) (k). Id. Absent such limitation, the Court may exercise in personam jurisdiction to the full extent permitted by the Due Process Clause of the Fifth Amendment, which governs the federal courts. Id. The relevant question under the Fifth Amendment is whether the Defendants have "minimum contacts" with the United States, rather than with a particular state as under the Fourteenth Amendment. Anheuser-Busch, Inc. v. Pactues (In re Paques), 277 B.R. 615, 628 (Bankr. E.D. Pa. 2000) (emphasis added). See also Klingher v. Salci (In re Tandycrafts, Inc.), 317 B.R. 287, 289 (Bankr. D. Del. 2004) ("A bankruptcy case usually does not affect only the sovereignty of a particular state; it has effects throughout the United States as a whole. So long as a defendant has minimum contacts with the United States, therefore, due process permits service on it.").

3

Defendants admit they are incorporated, or have principal places of business, in one or the other of Florida and Texas. As such, they obviously have "minimum contacts" with the United States. Aside from their general grumblings about being hauled into court in Delaware, the Defendants have pointed to no specific considerations that would render jurisdiction unreasonable in this forum. See Grand Entm't Group v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993) (holding that if minimum contacts are established, the defendant "must present a compelling case" that the exercise of jurisdiction would violate traditional notions of "fair play and substantial justice"). No such showing has been made or is evident here, therefore, the jurisdictional argument is without merit.

### B.    Failure to State a Claim

Defendants seek to dismiss the complaint on account of the Trustee's alleged failure to provide any supporting factual allegations that the Debtors did not receive reasonably equivalent value in exchange for the payment made to Defendants or to support the other theories of recovery. Under Fed. R. Civ. P. 12 (b)(6), a motion to dismiss "should be granted when, accepting all well-pleaded factual allegations as true, the Plaintiff is not entitled to relief as a matter of law." In re Digital Island Sec. Litig., 223 F. Supp. 2d 546, 550 (D. Del. 2002), aff'd, 357 F.3d 322 (3d Cir. 2004). Defendants point out decisions holding that a complaint containing mere "conclusory allegations unsupported by factual assertions fails even the liberal standards of Rule 12(b)(6)," e.g., De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996), and that the Court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

4

The Trustee argues that dismissal of a complaint on the grounds that it fails to state a claim upon which relief may be granted is a drastic remedy that should not be invoked "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-56 (1957). The Trustee points out that in considering a motion to dismiss under Rule 12(b)(6):

> Courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. The inquiry is not whether plaintiffs will ultimately prevail in the trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims.

C. W. Sommer & Co. v. Rockefeller (In re Rockefeller Crt. Props., Inc. Sec. Litig.), 311 F.3d 198, 215 (3d Cir. 2002) (citations omitted). The Trustee correctly states the moving party has the burden of persuasion, Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409, (3d Cir. 1991), and that "[t]he purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve the disputed facts or decide the merits of the case." Koninklijke Numico N.V. v. KEB Enters., No. Civ. A. 02-1529 (GMS) 2003 WL 1746404, at *1 (D. Del. Mar. 31, 2003). He argues that, because the Complaint fairly apprises the Defendants of the nature of the claims against them, dismissal is inappropriate. At any rate, the Trustee argues, dismissal with leave to amend would be a more appropriate remedy.

### 1. Pleading Standard

As a threshold matter, Defendants argue that the Trustee mistakenly presupposes that Fed.R. Civ. P. 8(a)(2)'s "notice pleading" standard governs the sufficiency of his Complaint. According to the Defendants, fraudulent transfer claims in bankruptcy are subject to any one of three heightened

5

pleading standards, namely: (1) Fed. R. Civ. 9(b)'s requirement that the "circumstances constituting fraud" be pled "with particularity," e.g., OHC Liquidation Trust v. Nucor Inc. (In re Oakwood Homes Corp.), 325 B.R. 696, 698 (Bankr. D. Del. 2005) ("There is no question that Rule 9(b) applies to . . . a claim for relief under §§ 544 or 548, whether it is based upon actual or constructive fraud."); Levitt v. Riddell Sports (In re MacGregor Sporting Goods, 199 B.R. 502, 515 (Bankr. D.N.J. 1995) ("Rule 9(b) applies to fraudulent conveyance proceedings."); (2) the so-called "liberal" or "relaxed" Rule 9(b) fraud pleading standard, e.g., Pardo v. Gonzaba (In re APF Co.), 308 B.R. 183, 188 (Bankr. D. Del. 2004) ("[I]n the bankruptcy context, Rule 9(b) should be interpreted liberally, particularly when the trustee is bringing the action") (quotation, citation omitted); or (3) the seemingly heightened Rule 8(a)(2) notice pleading standard applied by some courts to preference actions, e.g., TWA Post Confirmation Estate, Inc. v. Marsh USA Inc. (In re TWA Post Confirmation Estate), 305 B.R. 228, 233 (Bankr. D. Del. 2004) (setting forth the information that "must be pled in a complaint to survive a motion to dismiss"); Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.), 288 B.R. 189, 192 (Bankr. D. Del. 2003) (same, holding that "merely quoting statutory language is insufficient to survive a Rule 12(b)(6) motion").

The Court rejects the Defendants' proposed pleading standards. Practically speaking, in this case Rule 9(b) does not help much because the "circumstances constituting fraud" in this case are those set forth in the very statute that provides the Trustee's primary cause of action. See, e.g., Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.), 327 B.R. 711, 718 (Bankr. D. Del. 2005) (noting that a claim for constructively fraudulent conveyance need only allege "that the conveyance was made without fair consideration while the debtor was functionally

insolvent"). By operation of Delaware law, a transfer is "fraudulent" as to present and future creditors if the debtor made the transfer

> [w]ithout receiving a reasonably equivalent value in exchange . . . and the debtor:
> a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or
> b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

6 Del. C. § 1304(a)(2). Similarly, a transfer is "fraudulent" as to present creditors "if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer. . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . ." 6 Del. C. § 1305 (a).

Against this backdrop, it is simply not helpful to speak of the Rule 9 (b) pleading standard, whether "relaxed" or otherwise, as if it requires something more than pleading the factual elements of the cause of action. Accordingly, the Court joins with those decisions that have (either implicitly or explicitly) evaluated fraudulent transfer complaints using Rule 8 (a) (2)'s notice pleading standard. See, e.g., Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc.), --- B.R. ---, 2006 WL 771325, at *3 (Bankr. D. Del. Feb. 2, 2006) (applying "liberal notice pleading standard"); AstroPower, 335 B.R. at 333 (holding that a fraudulent transfer complaint "need only set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made against him"); Official Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.), 326 B.R. 301, 305-306 (Bankr. D. Del. 2005) (applying Rule 8 (a) (2) ); Tese-Milner v. TPAC, LLC (In re Ticketplanet.com), 313 B.R. 46, 68 (Bankr. S.D.N.Y. 2004) ("While there is authority to the

contrary, the better and majority rule is that a claim for constructive fraud . . need not be pleaded with particularity . . . ."); Nisselson v. Drew Indus. (In re White Metal Rolling & Stamping Corp.), 222 B.R. 417, 429 (Bankr. S.D.N.Y. 1998) ("[T]he sole consideration should be whether, consistent with the requirements of Rule 8 (a), the complaint gives the defendant sufficient notice to prepare an answer, frame discovery and defend against the charges.").

This Court has previously stated its disagreement with those cases applying a so-called "heightened" Rule 8 pleading standard to preference actions, see IHDG Litigation Trust v. Westaff (USA), Inc. (Imperial Home Decor Group, Inc.), Adv. Proc. No. 02-1115 (WS), 2005 WL 459649, at *2 (Bankr. D. Del. Feb. 24, 2005), and at any rate would not extend their holdings to fraudulent conveyance actions such as this. See also Official Comm. of Unsecured Creditors of the IT Group v. Brandywine Apartments (In re IT Group, Inc.), 313 B. R. 370, 373 (Bankr. D. Del. 2004) ("The fact that Bankruptcy Rule 7008, which contains special pleading requirements in certain adversary cases before bankruptcy judges, fails to provide . . . additional requirements for preference actions indicates it was intended that the adequacy of pleadings in such actions be judged under the notice pleading standard of Civil Rule 8 (a) (2) . . . ."); Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.), 290 B.R. 55, 65 (Bankr. S.D.N.Y. 2003) (concluding that the Bankruptcy Rules "do not impose a heightened pleading standard on preference claims"). Accordingly, the Court will evaluate the Trustee's Complaint using ordinary Rule 8(a)(2) principles.

### 2.    Sufficiency of Pleading

The Complaint may be summarized as follows. Its first six paragraphs delineate the parties and the basis for the Court's jurisdiction and venue. Its next section, labeled "Factual Statement," is set out in paragraphs 7 through 27, which detail (1) what are labeled "The Initial Acquisitions" (i.e.,

the Debtor's formation and agreements to acquire ownership interests in each of the named various entities); (2) the financing and (3) closing of the various Acquisitions; (4) the financial impact of specified Acquisitions upon the Debtor and the acquired entities (whose assets were the collateral for the financing of the acquisitions); and (5) a relatively contemporaneous acquisition, including the various amounts paid at the closing, with the stated result that the debts of the acquired entity were greater than the fair value of its assets and that it and the Debtor were thusly rendered insolvent; and that, putting all of the various acquisitions together and looking at the results collectively, the same was true of the entire entity, which, as a result, was or became engaged in a business for which the remaining asserts were unreasonably small in relation to its business. The next six paragraphs of the Complaint allege post-acquisition defaults to the acquisition- financing lenders and, notwithstanding such defaults, the payment, over a period of some three years, of specified and material management fees to the sellers of the acquired assets. The remaining twenty-two paragraphs of the Complaint are divided into four counts against the various Defendants and seek return of the specified amounts of the investment and management fees from those entities to whom they were paid. In each count, the Complaint employs the language of the relevant statute, i.e., alleging that the payments of investment/management fees were "fraudulent transfers," that the Debtor received less than reasonably equivalent value in exchange for them, that the entities were rendered insolvent, and that the remaining assets were unreasonably small in relation to the business of the enterprise as a whole.

Fed. R. Civ. P. 8(a), made applicable to this proceeding by Fed. R. Bankr. P. 7008, requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff need not set out in detail the facts upon which he bases his claim, so long as he gives the defendant(s) fair notice of what the claim is and the grounds upon which it rests. Leatherman v.

Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 167 (1993) (quoting Conley, 355 U.S. at 47). "Because Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, more extensive pleading of facts is not required." In re DVI, 326 B.R. at 306 (quotation, citation omitted).

Applying the indicated principles to the facts in this situation, the Court concludes that (1) the Complaint, as it stands, is sufficient to survive the motion to dismiss (even under the heightened pleading standards proposed by the Defendants); and (2) even if the Complaint were insufficient, the appropriate remedy in any event would be to give the Plaintiff thirty (30) days to amend the Complaint, see Fed. R. Civ. P. 15 (a) (leave to amend a complaint "shall be freely given when justice so requires"); Fed. R. Bank. P. 7015 (incorporating the same). If the Complaint stated virtually nothing more than the conclusory language of the applicable statutes, Defendants might have at least a germ of a point, or at least one requiring some kind of amendment. As is apparent from the above summary, however, this particular Complaint says much, much more, and what it says goes far to acquainting Defendants about the nature of this action.

Defendants seem to think that to survive their dismissal motions, the Trustee has to assert specifically in the Complaint what the particular assets of the various businesses or entities were, their value, and by what amount or by how much or what measure they were unreasonably small in relation to the resulting business; and/or what were the asset values and debts numbers that illustrate the claimed insolvency; and/or what, if any, was the consideration given and what was the value received, and by what amount(s) or measure(s) was that consideration not reasonably equivalent to what was received. Suffice it to say that this is what the Trustee will have to prove at trial, but it is not what is necessary to survive the Defendants' motion to dismiss. By any standard, Defendants, through the

plain language of the Complaint, know what this proceeding is about, which transactions it seeks to attack, and why. Given that, in the federal courts at least, it is the discovery process that is designed to fill in and fill out what is necessary both for a plaintiff to properly prove his case and for the plaintiff's adversary to properly defend it.

## IV.  CONCLUSION

Accordingly, for the reasons stated, the Defendants' Motions to Dismiss are **DENIED**; and Plaintiff's Motion for Leave to Amend is **GRANTED** to the extent that Plaintiff desires (but is not required hereby) to do so. Any such amendment is to be filed within thirty (30) days from the date hereof.

The parties shall submit a proposed order.

_____
Walter Shapero
United States Bankruptcy Judge

Dated: Sept. 29, 2006